## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

**IN RE YASMIN AND YAZ (DROSPIRENONE)**      **3:09-md-02100-DRH-PMF**
**MARKETING, SALES PRACTICES AND**
**PRODUCTS LIABILITY LITIGATION**         **MDL No. 2100**

                                                    **ORDER**

**This Document Relates to:**

**Evangeline Semark Lemoine,**

     **Plaintiff,**                      **Case No. 3:10-cv-20332-DRH –PMF**

**v.**

**TEVA PHARMACEUTICAL**
**INDUSTRIES, LTD., TEVA**
**PHARMACEUTICALS USA,**
**INC., BAYER CORPORATION,**
**BAYER HEALTHCARE**
**PHARMACEUTICALS, INC.,**
**BAYER HEALTHCARE, LLC,**
**BAYER SCHERING**
**PHARMA AG, BAYER HEALTHCARE AG**
**and WALGREEN CO.**

     **Defendants**

## <u>ORDER</u>

**HERNDON, Chief Judge:**

### I.    INTRODUCTION

       This matter is presently before the Court on Plaintiff's motion to remand to state court (Doc. 30). Plaintiff, an Illinois citizen, asserts claims for personal injuries suffered as an alleged result of the prescription

1

pharmaceutical product Ocella, a generic version of Yasmin (Doc. 1 pp. 30-32 ¶¶ 61-68; Doc. 5 ¶ 33).  Plaintiff asserts claims against TEVA Pharmaceutical Industries, LTD., TEVA Pharmaceuticals USA, INC. (collectively, "TEVA Defendants"), Bayer Corporation, Bayer HealthCare Pharmaceuticals Inc., Bayer HealthCare, LLC, Bayer Schering Pharma AG, Bayer HealthCare AG (collectively, "Bayer Defendants"), and Walgreen Co ("Walgreen").  With the exception of Walgreen, none of the Defendants is a citizen of Illinois (Doc. 1 pp. 4-6 ¶¶ 15-23).

This case was originally filed in the Circuit Court of Cook County, Illinois.  On January 19, 2010, Defendants Bayer Corporation, Bayer HealthCare Pharmaceuticals Inc. and Bayer HealthCare LLC (collectively, "Removing Defendants") removed this action to the Northern District of Illinois based on diversity of citizenship pursuant to 28 U.S.C. § 1332 (Doc. 1).  The Removing Defendants and Walgreen allege that Walgreen, the sole non-diverse Defendant, was fraudulently joined and that its citizenship should be ignored (Doc. 1 pp. 5-6 ¶ 23; Doc. 33; Doc. 34). Plaintiff contends that Walgreen was not fraudulently joined and that the action should be remanded to state court (Doc. 30; Doc. 31; Doc. 37). Walgreen has also filed a motion to dismiss the claims directed against it (Doc. 34).  On June 10, 2010, the action was transferred to this Multidistrict Litigation with Plaintiff's motion to remand and Walgreen's motion to dismiss pending.   For the reasons stated herein the Court finds

that Walgreen has been fraudulently joined and **DENIES** Plaintiff's motion

to remand (Doc. 30).

## II.      DISCUSSION

**A.      Legal Standard**

**1.      Removal**

The removal statute, **28 U.S.C. § 1441**, is construed narrowly,

and doubts concerning removal are resolved in favor of remand. ***Doe v.***

***Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir.1993)**.  Defendants bear

the burden to present evidence of federal jurisdiction once the existence of

that jurisdiction is fairly cast into doubt. ***See In re Brand Name***

***Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 607 (7th Cir.1997).**

"A defendant meets this burden by supporting [its] allegations of

jurisdiction with 'competent proof,' which in [the Seventh Circuit] requires

the defendant to offer evidence which proves 'to a reasonable probability

that jurisdiction exists.' " ***Chase v. Shop 'N Save Warehouse Foods, Inc.*,**

**110 F.3d 424, 427 (7th Cir.1997) (citations omitted)**.  However, if the

district court lacks subject matter jurisdiction, the action must be

remanded to state court pursuant to **28 U.S.C. § 1447(c)**.

The statute regarding diversity jurisdiction, **28 U.S.C. § 1332**,

requires complete diversity between the parties plus an amount in

controversy which exceeds $75,000, exclusive of interest and costs.

Complete diversity means that "none of the parties on either side of the

litigation may be a citizen of the state of which a party on the other side is a citizen." **Howell v. Tribune Entertainment Co., 106 F.3d 215, 217 (7th Cir. 1997) (citations omitted)**.

### 2.  Fraudulent Joinder

"A plaintiff typically may choose its own forum, but it may not join a nondiverse defendant simply to destroy diversity jurisdiction." **Schur v. L.A. Weight Loss Centers, Inc.  577 F.3d 752, 763 (7th Cir. 2009)**. **See also Gottlieb v. Westin Hotel Co., 990 F.2d 323, 327 (7th Cir.1993) (collecting cases)**.   "The 'fraudulent joinder' doctrine, therefore, permits a district court considering removal "to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." **Schur, 577 F.3d at 763**.

In the context of jurisdiction, "fraudulent" is a term of art.  **See Poulos v. Naas Foods, Inc., 959 F.2d 69, 73 (7th Cir.1992)**.  "Although false allegations of jurisdictional fact may make joinder fraudulent ... in most cases fraudulent joinder involves a claim against an in-state defendant that simply has no chance of success whatever the plaintiff's motives." **Id. (collecting cases)**.  To prove fraudulent joinder, the out-of-state defendant must "show there exists no 'reasonable possibility that a state court would rule against the [in-state] defendant.'" **Schwartz v. State Farm Mutual Auto. Ins. Co., 174 F.3d 875, 878 (7th Cir.1999) (citing Poulos, 959**

**F.2d at 73)).**  The defendant bears a heavy burden in this regard.  ***Id.  See***

***also Schur*, 577 F.3d at 764 (in a fraudulent joinder analysis, the**

**"district court must ask whether there is 'any reasonable possibility'**

**that the plaintiff could prevail against the non-diverse defendant")**.

**B.      Discussion[1]**

      **1.      Fraudulent Joinder**

      **a.      Claims**

Walgreen is a pharmacy defendant that allegedly distributed

Ocella to the Plaintiff pursuant to her physician's prescription.  Plaintiff

brings three counts against Walgreen: (1) strict liability; (2) negligence; and

(3) breach of implied warranty (Doc. 1 pp. 48-51 ¶¶ 151-167).

      **b.      Strict Liability[2] and Negligence[3]**

The viability of the strict liability and negligence counts depend

on whether Illinois imposes an affirmative duty on pharmacists to warn

---

[1]  The Court issued an Order denying remand in another member action involving an in-state pharmacy defendant that involved virtually identical issues and arguments.  ***See In re Yasmin and Yaz (Drospirenone) Marketing, Sales Practices and Products Liability Litig.*, 692 F. Supp. 2d 1025 (S.D. Ill. 2010) (applying Illinois law)**.

[2]  Alleging that "Ocella was defective and unreasonably dangerous when it left the possession of Defendant Walgreen in that it contained warnings insufficient to alert consumers, including Plaintiff, of the dangerous risks and reactions associated with the subject product, notwithstanding Defendant Walgreen's knowledge of such risks and reactions." (Doc. 1 p. 48 ¶ 152).

[3]  Alleging that Walgreen "[p]laced an unsafe product into the stream of commerce" and "[f]ailed to warn of the dangers associated with the use of Ocella despite having actual and constructive knowledge of such dangers." (Doc. 1 p. 49 ¶ 158).

customers about a drug's risks and side effects.  Accordingly, resolution of the fraudulent joinder issue, with respect to these counts, depends on whether Walgreen owed Plaintiff a duty to warn.

As a preliminary matter, this Court notes that the issue before it is a narrow one.  Plaintiff is not alleging that Walgreen incorrectly filled her prescription or that Walgreen negligently performed a voluntary undertaking.  Nor is Plaintiff alleging that Walgreen had patient-specific knowledge about her drug allergies and therefore knew the prescribed drug was contraindicated for her.  In each of these scenarios, Plaintiff would have a valid claim against Walgreen under Illinois law.  ***See* Jones v. Walgreen *Co.*, 265 Ill. App. 308 (Ill. App. 1932) (when doubt exists as to what drug has been prescribed, pharmacist has a duty to take reasonable precautions to ensure prescription is accurately filled); *Frye v. Medicare-Glaser Corp.,* 605 N.E.2d 557 (where pharmacy voluntarily provides warning about prescription drug to customer, the extent of pharmacy's duty is to perform the voluntary undertaking without negligence); *Happel v. Wal-Mart Stores, Inc.*, 766 N.E.2d 1118, 1129 (Ill. 2002) (pharmacy has "narrow duty to warn" when it has "patient-specific information about drug allergies, and knows that the drug being prescribed is contraindicated for the individual patient").**  Rather, Plaintiff's failure to warn claims assert that Walgreen is liable, in both strict liability and negligence, for distributing a prescription

drug that allegedly contained inadequate warnings.  Accordingly, the limited question before the Court is whether, under Illinois law, a pharmacist, that correctly fills a prescription and does not have any patient-specific knowledge, has an affirmative duty to warn a customer about a prescription drug's potential side effects.

Illinois courts have consistently held that a pharmacist does not have an affirmative duty to provide customers with a warning regarding a drug's potential risks or side effects.  **See Happel, 766 N.E.2d at 1129 (absent an allegation of "specialized knowledge," pharmacies have no affirmative duty to warn patients of potential adverse reactions to prescription drugs); Leesley v. West, 518 N.E.2d 758 (Ill. App. Ct. 1988) (pharmacists have no duty to provide patients with a written copy of a prescription drug's known risks and side effects); Jones v. Irvin, 602 F. Supp. 399, 401 (S.D. Ill. 1985) ("the overwhelming majority of recent state cases stand for the proposition that the pharmacist has no duty to warn")**.

One of the stated reasons for declining to impose a duty to warn on pharmacists is that imposing such a duty would run contrary to the public policy against "expanding the liability risks of health professionals."  **Leesley, 518 N.E.2d at 763**.  Additional reasons cited by Illinois courts include:  (1) Interference with the doctor-patient relationship **see e.g., Fakhouri, 618 N.E.2d at 521**; (2) the magnitude of the burden

of imposing a duty to warn is too great **see *Leesley*, 518 N.E.2d at 763;**

(3) the injury that might result due to the absence of a particular warning is

not reasonably foreseeable ***see Id.***; and (4) imposing a duty to warn would

be inconsistent with the learned intermediary doctrine.[4]  ***See Id.* at 762-**

**763 (declining to impose a duty to warn on the defendant pharmacy, in**

**part, because it would be "illogical and inequitable" to impose a duty**

**on a pharmacist that is not imposed on the drug's manufacturer)**.

Considering these opinions, it is clear that in Illinois, a pharmacist does not

have an affirmative duty to warn customers about a prescription drug's

dangerous propensities or side effects.

    As an additional matter, the Court addresses the parties'

arguments with respect to the learned intermediary doctrine.  Plaintiff

contends that Walgreen's duty to warn is a question of fact that must be

resolved by a jury because (1) the adequacy of the warnings provided by the

manufacturing defendants is in question; (2) the adequacy of the subject

warnings is a question of fact for the jury; and (3) Walgreen's liability is

dependent on whether the manufacturing defendants provided adequate

---

[4]  The learned intermediary doctrine provides that pharmaceutical manufacturers do not have a duty to directly warn patients about a prescription drug's dangerous propensities.  Rather, pharmaceutical manufacturers have a duty to inform physicians of the dangers of prescription drugs, and that physicians have a duty to warn patients of those dangers.  ***See Kirk v. Michael Reese Hospital and Medical Center*, 513 N.E.2d 387, 392 (Ill. 1987) (considering a drug manufacturer's duty to warn and adopting the learned intermediary doctrine).**

warnings.  The Court agrees that generally the adequacy of warnings is a question of fact for a jury.  The Court, however, does not agree that a pharmacy is shielded from liability for failure to warn if and only if the manufacturing defendant has provided the prescribing physicians with adequate warnings. [5]

Illinois Courts have consistently held, absent certain exceptions not present here, a pharmacist does not have an affirmative duty to warn. The learned intermediary rule is one reason Illinois courts have cited in support of declining to impose such a duty.  The relevant authority, however, does not indicate that whether a pharmacist owes such a duty is dependent on the adequacy of a manufacturer's warning in a particular case.  Moreover, adopting Plaintiff's proposed reasoning would nullify the no duty to warn rule and would be contrary to the policy considerations that have been relied on in declining to impose such a duty.

Because Walgreen did not have a duty to warn, Plaintiff's negligence and strict liability claims have no reasonable chance of success. [6]

---

[5] The Court is familiar with the line of cases out of the Southern District of Illinois that have adopted Plaintiff's line of reasoning. ***See e.g., McNichols v. Johnson & Johnson*, 461 F. Supp. 2d 736 (S.D. Ill. 2006) (Murphy, P.)**.  These cases, however, are not binding on this Court and for the reasons herein the Court declines to adopt this reasoning.

[6] Plaintiff also raises an argument with regard to the common defense doctrine (Doc. 31 pp. 5-8).  As discussed above, Walgreen's duty to warn is not dependent on the manufacturing defendants establishing that the learned intermediary doctrine applies.  Thus, the common defense doctrine

### b.    Implied Breach of Warranty

Plaintiff asserts a claim for breach of implied warranty of merchantability against Walgreen based on its role as the pharmacy that allegedly dispensed Ocella to the Plaintiff (Doc. 1 pp. 50-51 ¶¶ 161-167). Breach of warranty claims only apply to transactions in goods as defined by the Illinois Commercial Code ("Illinois UCC"). **See 810 ILCS 5/2-102**.  The Illinois UCC defines goods as "all things, including specially manufactured goods, which are movable at the time of identification to the contract for sale." **810 ILCS 5/2-105(1)**.  Prescription medication, such as Ocella, would constitute a good under this definition.

The practice of pharmacy, however, involves more than the provision of pharmaceuticals; it also involves the provision of professional healthcare services. ***See e.g.,* 225 ILCS 85/3(d)(1) ("practice of pharmacy" includes "the interpretation and the provision of assistance in the monitoring, evaluation, and implementation of prescription drug orders"); 225 ILCS 85/3(d)(4) ("practice of pharmacy" includes "patient education on the proper use or delivery of medications"); 225 ILCS 85/3(d)(7) ("practice of pharmacy" includes the "provision of patient counseling"); 225 ILCS 85/3(r)(3) ("patient counseling includes "facilitation of the patient's understanding of the intended use of the medication"); 225 ILCS 85/3(d)(9) ("practice of pharmacy"**

is not applicable.

**includes "the provision of those acts or services necessary to provide pharmacist care"); 225 ILCS 85/3(d)(10) ("practice of pharmacy" includes "medication therapy management"); ILCS 85/3(d); 225 ILCS 85/1 (the practice of pharmacy in Illinois is "a professional practice affecting the public health, safety and welfare").  *See also Walgreen Co. v. Selcke,* 230 Ill. App. 3d 442, 451 (Ill. App. 1992) (acknowledging that the practice of pharmacy involves more than pulling packages from a shelf and ringing up a sale; the practice of pharmacy involves "the exercise of pharmaceutical interpretation, skill or knowledge of medicine or drugs.  The pharmacist chooses and describes the desired ingredient, as prescribed by the physician, and [makes determinations] from his or her own knowledge, training and experience").[7]**

Accordingly, a transaction such as the one at issue in this case, is a mixed transaction involving both the provision of goods and the provision of services.  In Illinois, where a transaction involves both the provision of goods and services, courts apply the "predominant purpose test" to determine whether there has been a transaction in goods.  Pursuant

---

[7] Plaintiff's brief in reply seems to acknowledge that the practice of pharmacy involves more than just the provision of goods (*See* Doc. 37 pp. 2-4) (noting a pharmacist's "education requirements" and arguing that (1) a pharmacist is a "chemist" with knowledge about the ingredients in prescription drugs; (2) pharmacists don't "merely" fill prescriptions but are "chemically trained" and possess knowledge regarding the drugs they are dispensing).

to the predominant purpose test, "there is a 'transaction in goods' only if the contract is predominantly for goods and incidentally for services." **Brandt v. Boston Scientific Corp., 204 Ill.2d 640, 275 Ill.Dec. 65, 792 N.E.2d 296 (Ill.2003) citing Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc., 199 Ill.2d 325, 352-353, 264 Ill. Dec. 283, 770 N.E.2d 177 (2002).**

The Illinois Supreme Court applied the predominant purpose test to an analogous transaction in **Brandt v. Boston Scientific Corp., 204 Ill.2d 640, 275 Ill.Dec. 65, 792 N.E.2d 296 (Ill.2003)**.[8]  The transaction at issue in **Brandt**, involved the sale of a medical device, by a health center, in conjunction with the provision of other healthcare services. The court concluded that although the transaction included the sale of a medical device, the "predominate nature of the transaction as a whole" was the provision of medical treatment for the plaintiff's infection and thus, the transaction was primarily one for services.  **Id. at 652-653**.  In so holding, the court noted that the plaintiff did not come to the health center "merely to buy a [medical device] as one buys goods from a store."  Rather, the

---

[8] Before applying the predominant purpose test, the court examined and declined to follow **Cunningham v. MacNeal Memorial Hospital, 47 Ill.2d 443, 266 N.E.2d 897 (1970)**.  The Court explained that **Cunningham** was not applicable because, among other things, the decision was issued prior to the adoption of the predominant purpose test.  The Court also noted that the **Cunningham** rationale was applied in **Berry v. G.D. Searle & Co., 56 Ill.2d 548, 554-55, 309 N.E.2d 550 (1974)**. Accordingly, **Cunningham** and **Berry** are not applicable to the breach of warranty analysis in this case.

plaintiff came to the health care center to receive treatment for her condition and the treatment she received involved a number of services in addition to the provision of the medical device.

The transaction at issue in the instant case is analogous to the transaction at issue in *Brandt*.  In the instant case, the sale of Ocella was just one aspect of the transaction between Walgreen and the Plaintiff.  Prescription drugs are not available to the general public.  They can only be legally distributed pursuant to a valid prescription from a licensed physician.  **See 21 U.S.C. § 353(b); 410 ILCS 620/2.37; 410 ILCS 620/3.21**.  A pharmacist acts as the gate-keeper of prescription medication, monitoring the distribution and implementation of prescription drug orders.  Thus, a pharmacist provides a service to the patient, the physician, and the community.   Moreover, the pharmacist provides a number of professional healthcare services, including utilizing professional skill and care to interpret and evaluate the prescription; educating patients as to the intended use of the medication and manner of ingestion; and maintaining necessary records for compounding, labeling, and storing pharmaceuticals.

Considering the entirety of the transaction, as the Illinois Supreme Court did in *Brandt*, it is evident that the sale of pharmaceuticals is just one aspect of the transaction between patient and pharmacist. The predominant purpose of such transactions is the provision of professional healthcare services which are a necessary step in completing the treatment

regimen selected by the patient's physician.  Therefore, the subject

transaction was not a "transaction in goods" and Plaintiff's breach of

warranty claim has no reasonable chance of success.

In addition, as the Court has already discussed, in Illinois,

pharmacies and pharmacists are immune from failure to warn claims.

Allowing plaintiffs to pursue a breach of warranty claim against

pharmacists would nullify this protection and would be inconsistent with

the policy against "expanding the liability risks of health professionals." *Id.*

**at 763.  *See also Id.* at 763**.

      **2.**    **Amount in Controversy**

In determining whether the jurisdictional threshold amount

has been met, pursuant to § 1332, the Court must evaluate "the controversy

described in the plaintiff's complaint and the record as a whole, as of the

time the case was removed." ***Uhl v. Thoroughbred Tech. and***

***Telecomm., Inc.*, 309 F.3d 978, 983 (7th Cir.2002) (*citing Shaw v.***

***Dow Brands, Inc.*, 994 F.2d 364, 366 (7th Cir.1993))**.  In the event that

any challenges are made regarding the amount in controversy, the party

asserting the existence of federal subject matter jurisdiction has the burden

of affirmatively establishing such jurisdiction. ***See Meridian Sec. Ins. Co.***

***v. Sadowski*, 441 F.3d 536, 540 (7th Cir.2006); *Brill v. Countrywide***

***Home Loans, Inc.*, 427 F.3d 446, 447 (7th Cir.2005)**.  If little

information is provided as to the value of a plaintiff's claims from the onset,

a court can find, at times, that a defendant's "good-faith estimate of the stakes is acceptable if it is plausible and supported by a preponderance of the evidence." ***Oshana v. Coca-Cola Co.*, 472 F.3d 506, 511 (7th Cir.2006) (*citing Rubel v. Pfizer, Inc.*, 361 F.3d 1016, 1020 (7th Cir.2004))**.   Moreover, a plaintiff "may not manipulate the process" to defeat federal jurisdiction and force a remand once the case has been properly removed. ***Gould v. Artisoft, Inc.*, 1 F.3d 544, 547 (7th Cir.1993) (citations omitted)**.

In her Complaint, Plaintiff alleges that, as a result of her alleged exposure to Ocella, she: "suffered physical injury, including, but not limited to, conscious pain and suffering, as a result of her acute deep venous thrombosis and multiple bilateral pulmonary emboli," as well as past and continuing pecuniary losses (Doc. 1 pp. 31-32 ¶¶ 67-68).  Plaintiff seeks damages for "serious injury, harm, damages, economic and non-economic loss" as well as "continu[ing] . . . harm, damages and losses in the future" "in excess of $50,000." ***Id.* at p. 32 ¶ 72**.

The Removing Defendants contend that, "[i]n view of (a) Plaintiff's claimed severe and permanent injuries, (b) Plaintiff's claimed past and anticipated future expenses for medical care, monitoring, and/or medications, and (c) Plaintiff's claimed other physical, emotional, and economic injuries, there is a good faith basis to assume that the amount in controversy exceeds $75,000 (Doc. 1 p. 6 ¶ 25).  The Court agrees.  Given

the severe and ongoing nature of the injuries alleged, the Court finds that it is plausible and supported by the preponderance of the evidence that the amount in controversy has been established.  ***See e.g., McCoy by Webb v. General Motors Corp.,* 226 F. Supp. 2d 939, 941 ("courts have routinely held that when plaintiffs allege serious, permanent injuries and significant medical expenses, it is obvious from the face of the complaint that the plaintiffs' damages exceeded the jurisdictional amount")**.  The Court concludes that it has diversity jurisdiction of Plaintiff's cause of action.

### III.   CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's motion to remand (Doc. 30).

**SO ORDERED:**

David R. Herndon
2010.11.24
15:09:21 -06'00'

Chief Judge                                        Date: November 24, 2010
United States District